Cleo V. Ruble v. Commissioner.
Ruble v. Commissioner
Docket No. 109689.
United States Tax Court
1943 Tax Ct. Memo LEXIS 509; 1 T.C.M. (CCH) 404; T.C.M. (RIA) 43021; January 14, 1943
*509 MURDOCK Memorandum Opinion MURDOCK, Judge: The Commissioner determined a deficiency in the petitioner's income tax for the calendar year 1940 in the amount of $14,827.26. The deficiency resulted from the Commissioner's determination that dividends in the amount of $27,500 were income in 1940 rather than in 1939. The propriety of the inclusion of the dividends in 1940 income is the only issue. The facts have been stipulated. [The Facts] The petitioner is an individual. His income tax return for 1940 was filed with the collector for the district of Missouri. The petitioner in and prior to 1939 was the owner of 1 share of the capital stock of the Dealers Transport Company. His wife, Nita M. Ruble, owned 17 shares. George L. Belden and his wife, Gertrude A. Belden, owned the other 22 shares. Prior to the death of Belden in 1939, the directors of the company were Belden, the petitioner and the petitioner's wife. Belden was president and treasurer, the petitioner was vice president, and Mrs. Belden was secretary. The four stockholders of the Dealers Transport Company deposited all of their stock with a trustee in 1936. This was done pursuant to the terms of a written agreement *510 which provided in part that: Upon the death of either of said George L. Belden or Cleo C. Ruble, the Trustee * * * shall deliver all the stock then held by it to the survivor of them. * * * Belden purchased insurance on the life of the petitioner in the amount of $54,000, and the petitioner purchased insurance on Belden's life in the amount of $66,000. These sums represented the values, respectively, of the shares owned by the Rubles and by the Beldens. The insurance policies were deposited with the trustee who held the stock. The written agreement among the stockholders provided with respect to the policies that: Upon the death of either of said George L. Belden or Cleo V. Ruble, the Trustee shall deliver the policies then held by it on the life of the deceased to the beneficiaries named therein. * * * George L. Belden died on May 9, 1939, at which time the stock of Dealers Transport Company had a fair market value in excess of $3,000 per share. Belden, in making his will, had taken no cognizance of the 1936 contract, and a controversy arose as to the validity of the contract. Gertrude A. Belden claimed both the stock and the insurance proceeds. The trustee thereupon brought *511 an action in equity against the petitioner and his wife, and Gertrude A. Belden and the two Belden children, to require them to interplead to determine who was the owner of the stock and insurance policies held in trust. On December 26, 1939, before decision in the equity proceeding, the directors of Dealers Transport Company declared a dividend of $1,250 per share payable on December 29, 1939. The dividends on 18 shares were credited to the account of the respective shareholders, while those on the 22 shares standing in the names of Belden and his wife were credited to a suspense account on the books of the company. It had been the practice of officials and shareholders of the company to withdraw money at various times, and such withdrawals were charged to their accounts on the books of the company. It had been the practice of the company to declare a dividend near the end of each year and to credit each shareholder's portion thereof to his account. The company had never followed the policy of issuing checks in payment of dividends. After the death of Belden the petitioner was in complete charge of all affairs of the company, including the issuing and signing of checks. The equity *512 proceeding was decided in 1940. By letter dated July 15, 1940 the Judge advised counsel for the parties what his decision would be. The decree of the Court was entered on July 31st. It was held that the 1936 agreement was a valid contract and binding on the parties; that the petitioner "is the owner of 22 shares of the capital stock of Dealers Transport Company" represented by the certificates standing in the names of Belden and Mrs. Belden; and that Mrs. Belden was the owner of the policy of insurance on the life of Belden and entitled to the proceeds. On or about July 23, 1940 the company issued its check to the petitioner in the amount of $27,500 representing the dividends on the 22 shares acquired by the petitioner from the Beldens. The stock certificates in the names of the Beldens were delivered to the petitioner on August 2, 1940. He surrendered them to the company and had new certificates for 22 shares issued in his name or in the name of his assignee. The petitioner reported the $27,500 of dividends received in 1940 as income for 1939. The Commissioner reduced the 1939 reported income by that amount, and increased 1940 income by the same amount, since the $27,500 declared *513 as dividends on the 22 shares of stock acquired by the petitioner in 1940 was not paid or available to the petitioner until 1940, and the petitioner's returns were filed on a cash receipts and disbursements basis. [Opinion] There is no evidence as to the accounting method used by the petitioner in keeping his books and making his return, so we must assume that the Commissioner correctly determined that the returns were on the cash basis. Actual payment is usually the decisive factor in determining the year in which a cash basis taxpayer must report either income or deduction. The $27,5000 was not paid until 1940. One exception to the general rule is that income may be constructively received. . Perhaps the petitioner is relying upon this rule. (He has made no argument.) The Commissioner's Regulations give as an example of constructive receipt treatment of dividends as income in the year when they are "unqualifiedly made subject to the demand of the shareholder." Article 42-3, Regulations 101. Article 115-1 of the same Regulations provides that a taxable distribution by a corporation "shall be included in the gross *514 income of the distributees when the cash or other property is unqualifiedly made subject to their demands." The same language as in Article 115-1 in earlier Regulations has been held not to require the inclusion of dividends in income for the year in which dividend checks were mailed where the checks were not received until the following year. . The Court said in that case that "The checks did not constitute payments prior to their actual receipt." The petitioner in this case is not in as good a position as the Commissioner was in the Avery case to claim that the dividend was income in the earlier year. The petitioner here did not have title to or possession of the stock in 1939, and no dividend check was issued in that year. He, therefore, can not successfully claim that the cash was unqualifiedly made subject to his demand in 1939. There apparently was real doubt as to ownership. Decision will be entered for the respondent.